UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

KAREN LOMBARDI,
  Plaintiff,

v.                   No. 3:14-cv-1687 (VAB)

KAREN MYERS and
BRIAN MCCARTHY,
  Defendants.

## AMENDED[1] RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

  Plaintiff, Karen Lombardi, sued Sergeant Brian McCarthy of the Woodbridge Police Department and Karen Myers, a former work colleague. Notice of Removal at Compl., ECF No. 1.[2] Ms. Lombardi's claims arise out of an incident in which Ms. Myers accused Ms. Lombardi of physically abusing a twenty-one pound dog named Timone. Ms. Lombardi alleges that both Defendants are liable for malicious prosecution under 42 U.S.C. § 1983 and that Ms. Myers is liable for defamation.

  Defendants Myers and McCarthy have moved for summary judgment on the malicious prosecution claims only. Mot. for Summ. J., ECF No. 16. For the reasons that follow, the motion is **GRANTED** in its entirety, and the Court declines to exercise supplemental jurisdiction over the remaining defamation claim.

  **I.**  **STATEMENT OF FACTS**

  Ms. Lombardi works as an Animal Control Officer in Woodbridge, Connecticut. Ms. Myers worked in "Kennel Care" at the same shelter in Woodbridge. At the time relevant to this lawsuit, the Woodbridge Police Department oversaw the shelter's operations. Defs.' Ex. B,

---

[1] This ruling amends the Court's prior summary judgment ruling filed on August 15, 2016 to remand the remaining state law claim, rather than dismiss it without prejudice. Otherwise, this amended ruling is identical to the prior ruling in all respects.

[2] Ms. Lombardi initiated the case in state court, and the Defendants removed it to this Court. Notice of Removal, ECF No. 1.

1

McCarthy Dep. 14:23-24, ECF No. 16-3.  Ms. Lombardi and Ms. Myers also have known each other for many years, because Ms. Myers is friends with Ms. Lombardi's cousin and attends family events.  Defs.' Ex. A, Myers Dep. 5:22-6:6, ECF No. 16-3.

While working together at the Woodbridge Animal Control Shelter, Ms. Myers claims that she witnessed Ms. Lombardi physically abuse a dog named Timone.  After Ms. Myers resigned from her position at the shelter, she discussed the incident with her cousin, Mr. McCarthy, who worked as a police officer for the Town of Woodbridge.  *Id.* at 22:19-23:2; Pl.'s Ex. 1, Myers Dep. 12:14-18, ECF No. 17-2.  Officer McCarthy reported the conversation to his supervisors.  Defs.' Ex. B, McCarthy Dep. 19:14-19, ECF No. 16-3.

One of his supervisors, Lieutenant Lieby, sent Officer McCarthy and another officer to take a formal statement from Ms. Myers about the incident.  *Id.* at 19:23-20:1.  She ultimately made a written statement, which she signed.  Defs.' Ex. C, Myers's Statement, ECF No. 16-3.  The statement indicates that Ms. Myers resigned from her position with Animal Control, because she felt that Ms. Lombardi created a hostile work environment by yelling at her and failing to control her anger.  *See id.*  During one incident, she claims that Ms. Lombardi kicked a series of kennel doors "as hard as she could" because she was angry.  *Id.* at 2.  She also mentioned the incident with Timone in the statement.  Ms. Myers claims that Ms. Lombardi threw the dog against a wall and yelled obscenities at him.  *Id.* at 2-3.  Ms. Myers explained that just before the altercation occurred, she was having trouble putting a coat on Timone because he would not hold still, and Ms. Lombardi came to assist her.  *Id.* at 2.  Ms. Myers claimed that another Animal Control Officer, Paul Niedmann, had also witnessed the incident.  *Id.* at 2.

Officer McCarthy filed Ms. Myers's statement and a police report.  Defs.' Ex B, McCarthy Dep. 21:24-22:2, ECF No. 16-3.  To further investigate her claims, Officer McCarthy

2

then sought a statement from Mr. Niedmann.  *Id.* at 22:15-16.  Mr. Niedmann came into the police station and gave a formal written statement, which he signed, indicating that he had seen Ms. Lombardi shaking Timone and yelling obscenities at him.  Defs.' Ex. D, Niedmann Statement at 2-4, ECF No. 16-4.  He did not indicate that he had seen Ms. Lombardi throw Timone against a wall.  But he did opine in his statement that the way that Ms. Lombardi shook Timone constituted animal cruelty.  *Id.* at 4.  McCarthy again submitted Mr. Niedmann's statement to his supervisor.  Defs.' Ex B, McCarthy Dep. 25:9-11, ECF No. 16-3.

As the final part of his investigation of the incident, Officer McCarthy testified that he asked Ms. Lombardi whether she would speak to him about it, and that she refused.  *Id.* at 25:12-16.  Ms. Lombardi testified that no one ever asked her for a statement about the incident.  Pl.'s Ex. 3, Lombardi Dep. 64:22-24, ECF No. 17-2.

Based on the information gathered by Officer McCarthy, Lieutenant Lieby decided to apply for an arrest warrant for Ms. Lombardi on a charge of animal cruelty.  Defs.' Ex B, McCarthy Dep. 27:6-14, ECF No. 16-3.  When the warrant was approved, Ms. Lombardi was arrested.  She was required to pay a $1,000 bond to be released.  Pl.'s Ex. 3, Lombardi Dep. 26:22-24, ECF No. 17-2.  Ultimately the criminal charge was nolled.[3]

In the context of this lawsuit, Ms. Lombardi claims that she did not yell at, shake, or otherwise physically harm Timone.  She testified that she tried to "restrain him while trying to put a sweater on him" and had done so to assist Ms. Myers, who had also been trying to put a sweater on him.  *Id.* at 63:17-20, 68:23-25.  She testified that it was difficult putting the sweater on him, as "[h]e was pretty wiggly," and that in doing so, she recalls verbally telling Timone

---

[3] "A nolle prosequi is a 'unilateral act by a prosecutor, which ends the pending proceedings without an acquittal and without placing the defendant in jeopardy.'" *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *Cislo v. City of Shelton*, 240 Conn. 590, 599 n.9 (1997)).  In other words, a charge is "nolled" when the prosecutor drops the charges before a resolution is reached in the case.

3

"no" firmly and possibly cursing.  *Id.* at 72:17-73:9.  She denies shaking Timone or throwing him into a wall.  *Id.* at 79:10-15.  After this alleged incident, Ms. Lombardi adopted Timone.  *Id.* at 8:9-12.

## II.     STANDARD

A party who moves for summary judgment bears the burden of establishing that there are no genuine issues of material fact in dispute and that he is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  When ruling on a motion for summary judgment, the Court must construe all facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  An issue of fact is "material" if it "might affect the outcome of the suit under the governing law" and is "genuine" if it could cause a reasonable jury to return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 248.  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III.    DISCUSSION

Ms. Lombardi first argues that the Defendants' Motion for Summary Judgment must be denied, because it was not accompanied by a proper Local Rule 56(a)1 Statement.  The Defendants filed a document titled "Local Rule 56(a)1 Statement," with three numbered paragraphs.  The Court agrees that at least one of these paragraphs, concluding that the police had probable cause to arrest Ms. Lombardi, constitutes a legal conclusion and does not belong in a Local Rule 56(a)1 Statement.  D. Conn. L. Civ. R. 56(a)1 (prescribing that the Local Rule

56(a)1 Statement should provide a "concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried"); *see also e.g.*, *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94 (2007) (noting that whether probable cause exists is a question of law); *United States v. Thomas*, 788 F.3d 345, 349 (2d Cir. 2015) (same).

Nevertheless, while Ms. Lombardi's Local Rule 56(a)1 Statement could have been more fulsome, the Court does not believe any of the issues raised about the statement warrant denying the Defendants' motion. Accordingly, the Court will proceed to examine the motion on the merits.

### A. Malicious Prosecution (Counts One and Two)

Section 1983 creates liability for individuals who, acting under color of state law, deprive a person of a federally protected right. 42 U.S.C. § 1983. Malicious prosecution claims brought under section 1983 typically implicate the Fourth Amendment right "to be free of unreasonable seizure of the person—*i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995); *see also generally Albright v. Oliver*, 510 U.S. 266, 274 (1994). Ms. Lombardi has confirmed that her malicious prosecution claims are brought under a Fourth Amendment theory. Pl.'s Opp. Br. 1, ECF No. 17.

To prevail on a malicious prosecution claim brought under section 1983 based on a Fourth Amendment theory, a plaintiff must establish (1) "a violation of his rights under the Fourth Amendment", and (2) all of "the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002); *Acevedo v. Sklarz*, 553 F. Supp. 2d 164, 172 (D. Conn. 2008). To show a violation of his Fourth Amendment rights, a plaintiff must

show "some deprivation of liberty consistent with the concept of seizure, and that deprivation must have been effected pursuant to legal process." *Clynch v. Chapman*, 285 F. Supp. 2d 213, 227 (D. Conn. 2003) (internal quotation marks omitted) (citing *Singer*, 63 F.3d at 116-17). Under Connecticut law, to show that a defendant is liable for malicious prosecution, a plaintiff must prove that: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Frey v. Maloney*, 476 F. Supp. 2d 141, 147 (D. Conn. 2007) (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982)).

Typically, the law holds the arresting and prosecuting officials liable for a malicious prosecution claim. *See Shattuck v. Town of Stratford*, 233 F. Supp. 2d 301, 313 (D. Conn. 2002). However, the person reporting the alleged criminal activity may also be held liable for such a claim so long as that person "instigated" or "initiated" the proceedings "by contacting the police and then encouraging the[ ] prosecution." *Id.* at 314. A witness who merely provides incriminating information, so long as that information is a complete and truthful disclosure, but does not otherwise "insist" or pressure a public officer to prosecute a plaintiff, has not initiated a criminal proceeding for the purposes of a malicious prosecution claim. *McHale v. W.B.S. Corp.*, 187 Conn. 444, 448 (1982). A private person may also be found to have initiated the case if he provided false information to the police. *See Bhatia v. Debek*, 287 Conn. 397, 407 (2008) ("[A] private citizen who knowingly provides false information to a public officer is not entitled to the limited immunity provided [under *McHale*], even if that person brought no pressure to bear on the public officer and left the decision to prosecute entirely in the hands of that public officer.").

6

The same standard applies to a malicious prosecution claim brought against a private person, as against a government actor.  *See id.* at 404.

Regardless of the defendant's identity, showing that the prosecution was unsupported by probable cause is crucial to sustaining a malicious prosecution claim past summary judgment. *See Falls Church Grp., Ltd.*, 281 Conn. at 94 ("[T]he existence of probable cause is an absolute protection against an action for malicious prosecution . . . .") (internal quotation marks and citation omitted); *Stansbury v. Wertman*, 721 F.3d 84, 94-95 (2d Cir. 2013) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution.") (internal quotation marks and citation omitted); *D'Angelo v. Kirschner*, 288 F. App'x 724, 726 (2d Cir. 2008) ("Ordinarily, in the absence of exculpatory facts which became known after an arrest, probable cause to arrest is a complete defense to a claim of malicious prosecution.") (citing *Johnson v. Ford*, 496 F. Supp. 2d 209, 214 (D. Conn. 2007)); *Turner v. Boyle*, 116 F. Supp. 3d 58, 86 (D. Conn. 2015) ("The existence of probable cause is a complete defense to a claim of malicious prosecution.").

In the context of a malicious prosecution claim, a plaintiff must show that the defendants lacked probable cause to prosecute, not just to arrest.  *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999).  However, under Connecticut law, "[o]rdinarily, in the absence of exculpatory facts which became known after an arrest, probable cause to arrest is a complete defense to a claim of malicious prosecution."  *D'Angelo*, 288 F. App'x at 726 (citing *McHale*, 187 Conn. at 447; *Johnson*, 496 F. Supp. 2d at 214).  Accordingly, the probable cause that sustained an arrest can also provide probable cause to prosecute, so long as the prosecuting authorities do not discover evidence of the person's overwhelming innocence after arresting them.  Because probable cause existed for the police to arrest and charge Ms. Lombardi with

7

animal cruelty, the Court dismisses the malicious prosecution claims against both Ms. Myers and Officer McCarthy.

Probable cause to prosecute exists if an officer has knowledge or reasonably trustworthy information that is sufficient to warrant a person of reasonable caution to believe that the person to be charged has committed or is committing a crime. *Falls Church Grp., Ltd.*, 281 Conn. at 94 ("Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action.") *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (noting in the false arrest context that "[p]robable cause . . . exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."). As noted above, probable cause is a question of law that may be resolved on summary judgment "if there is no dispute with regard to the pertinent events and knowledge of the officer." *Weinstock v. Wilk*, 296 F. Supp. 2d 241, 246 (D. Conn. 2003) (citing *Weyant*, 101 F.3d at 852); *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("It has long been recognized that, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court.").

Under Connecticut law, a person is guilty of the crime of animal cruelty if he or she "cruelly beats… or unjustifiably injures any animal," "fights with or baits" the animal, "harasses or worries any animal for the purpose of making it perform for amusement, diversion or exhibit," or having confined the animal, fails to "give such animal proper care." Conn. Gen. Stat. § 53-247(a). Animal cruelty is punishable by a fine of up to $1,000 or imprisonment of one year or both. *Id.*

The statements of Ms. Myers and Mr. Niedmann amply supported the decision to arrest and charge Ms. Lombardi for the crime of animal cruelty. Both of these individuals told the police that they saw Ms. Lombardi physically abuse Timone in various ways that a reasonable person could conclude constituted animal cruelty under Connecticut law. They both signed written statements memorializing what they told the police. Mr. Niedmann also specifically indicated that, based on his experience, he believed the way Ms. Lombardi treated Timone constituted animal cruelty.

There is nothing in the record indicating that the prosecuting authorities had any evidence of Ms. Lombardi's innocence anytime before her charges were nolled.[4] Mr. Niedmann testified that he told a private investigator that he had never seen Ms. Lombardi act cruelly to animals, but there is no evidence showing that this information was conveyed to the prosecuting authorities before the charges were nolled. Pl.'s Ex. 2, Niedmann Dep. 31:10-19, ECF No. 17-2. Thus, the police continued to have probable cause to prosecute Ms. Lombardi until her charges were nolled. *See D'Angelo*, 288 F. App'x at 726; *Estrada v. Torres*, 646 F. Supp. 2d 253, 260-61 (D. Conn. 2009) (granting summary judgment on a malicious prosecution claim where probable cause existed at the time of the arrest and there was no evidence that the prosecuting authorities learned of any exculpatory information "before or during" the plaintiff's prosecution).

Ms. Lombardi argues that this evidence is insufficient to show probable cause existed, because she was not, in fact, guilty of the animal cruelty offense with which she was charged, the

---

[4] Even if Ms. Lombardi did tell the police she was innocent when she was arrested, her claim of innocence alone does not negate the existence of probable cause, given the other evidence the police had in their possession. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *see also State v. Johnson*, 286 Conn. 427, 435 (2008) ("[P]roof of probable cause requires less than proof by a preponderance of the evidence . . . . The probable cause determination is, simply, an analysis of probabilities.") (internal quotation marks and citation omitted).

9

witnesses made false statements or were coerced into making their statements, and Officer McCarthy made a false statement when he submitted an affidavit in support of the arrest warrant.

There is no evidence, however, that, when the decision to arrest and charge Ms. Lombardi was made, the police had any information in their possession indicating that either Ms. Myers or Mr. Niedmann lied or were untrustworthy witnesses. Even if either of them, in fact, lied, probable cause existed based on what the police knew at the time Ms. Lombardi was arrested and charged. *See Falls Church Grp., Ltd.*, 281 Conn. at 95 ("Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of . . . .") (internal quotation marks and citation omitted); *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (noting in the false arrest context that probable cause is drawn objectively from facts known by the officer at the time) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *Walczyk*, 496 F.3d at 157 ("[P]robable cause does not demand any showing that a good-faith belief be 'correct or more likely true than false.' It requires only such facts as make wrongdoing . . . probable.") (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).[5] There is also insufficient evidence that either Ms. Myers or Mr. Niedmann were coerced into making their statements. In fact, Mr. Niedmann testified in the course of this lawsuit that he gave his statement to the police of his own free will. Defs.' Ex. E, Niedmann Dep. 14:5-23, ECF No. 16-4. There is also no evidence that Officer McCarthy fabricated witness statements or otherwise misrepresented any facts.

---

[5] *Bhatia v. Debek* does not require a different result. 287 Conn. 397 (2008). In *Bhatia*, the Connecticut Supreme Court affirmed the trial court's finding that there was no probable cause, because the sole reporting witness lied to the police. *Id.* at 411. Here, while there is some evidence in the record that Ms. Myers may have made false statements, there is no evidence whatsoever impugning the accuracy of Mr. Niedmann's statement. Mr. Niedmann's statement alone provided probable cause to arrest and charge Ms. Lombardi with animal cruelty.

10

Accordingly, because probable cause existed to arrest and charge Ms. Lombardi with animal cruelty, summary judgment must be granted on her malicious prosecution claims against both Defendants.

### B. Defamation (Count Three)

The Court has dismissed all of Ms. Lombardi's federal claims and declines to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001); *see also Kelly v. Signet Star Re, LLC*, 971 F. Supp. 2d 237, 254 (D. Conn. 2013) ("[T]his Court is reluctant to exercise supplemental jurisdiction in non-diversity cases, given that under 28 U.S.C. §§ 1367(c) and (c)(3), United States district courts may decline to exercise supplemental jurisdiction over a claim if they have dismissed all claims over which [they] ha[d] original jurisdiction . . . . The Second Circuit [ ] explained that . . . if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.") (citations and internal quotation marks omitted).

Because this case was initiated in Connecticut Superior Court and removed to this Court, the remaining state law claim is remanded to Connecticut Superior Court. *See Valencia v. Lee*, 316 F.3d 299, 308 (2d Cir. 2003) ("Because this case was commenced in state court, the district court should remand the action to the state court in which it was originally filed."); *see also e.g.*, *Kaya v. City of New London*, Civil Action NO. 3:05-CV-1436(JCH), 2008 WL 509240, at *1 (D. Conn. Feb. 13, 2008) (remanding the sole remaining state law causes of action in a case, rather than dismissing them, because the case had been initiated in Connecticut Superior Court and removed to federal court).

### IV.  CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 16, is **GRANTED**.  The malicious prosecution claims against McCarthy and Myers are dismissed.  The Court declines to exercise supplemental jurisdiction over the defamation claim and **REMANDS** that claim to Connecticut Superior Court. The Clerk is directed to enter judgment for the Defendants accordingly and close the case.

**SO ORDERED** this eighteenth of August 2016 at Bridgeport, Connecticut.

                                           /s/ Victor A. Bolden
                                           VICTOR A. BOLDEN
                                           UNITED STATES DISTRICT JUDGE